IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02418-WJM-NYW

DAEVON HOUSE,

    Plaintiff,

v.

TARA LEONE, in her individual capacity
RYDER MAY, in his individual capacity,
HUDSON T. WHITE, in his individual capacity, and
UNKNOWN JOHN/JANE DOE(s),

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This civil action comes before the court on Defendants' Opposed Motion for Leave to Amend Answer ("Motion to Amend") [#89, filed February 2, 2018]. The Motion to Amend was referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated January 23, 2017 [#32] and the memorandum dated February 5, 2018 [#90]. Having reviewed the Motion to Amend and Plaintiff's response thereto, the case file, and the applicable law, the court respectfully **RECOMMENDS** that the Motion be **DENIED**.

## BACKGROUND

Plaintiff Daevon House initiated this lawsuit on September 26, 2016, by filing *pro se* a form Prisoner Complaint asserting a single claim pursuant to 42 U.S.C. § 1983 for deliberate indifference in violation of his Eighth Amendment rights under the Constitution. [#1]. He named Tara Jones and John/Jane Doe as Defendants. The court granted Mr. House leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, [#4], and ordered him to file an amended

pleading. [#5]. On October 11, 2016, Mr. House filed an Amended Complaint adding Defendants Ryder May and Hudson T. White.[1] [#6]. Following a review pursuant to § 1915 and Local Rule 8.1, the court reassigned the matter to the Honorable William J. Martinez, who referred the case to the undersigned Magistrate Judge for pretrial management. [#7, #32].[2] The following facts are derived from the Amended Complaint.

Mr. House's sole claim arises from Defendant Leone's failure in her capacity as a nurse to diagnose him with appendicitis, which resulted in his undergoing multiple surgeries and his requiring the use of a colostomy bag, and Defendants May and White's subsequent failure to provide certain medical supplies to Plaintiff, including bandages and replacement colostomy bags. *See* [#6]. On January 20, 2017, Defendants Leone and May filed an Answer. *See* [#27]. On February 8, 2017, this court held a Status Conference and set certain pretrial dates, including a deadline of May 9, 2017 by which to amend pleadings. *See* [#41].

On March 3, 2017, Mr. House submitted several medical documents attached to a motion to supplement. *See* [#48-1]. The medical documents indicate that, in December 2014, Plaintiff complained of severe abdominal pain and was "given fluids and returned to his unit"; was "seen repeatedly for this issue and was eventually admitted to DH where he was found to have sepsis, performated [sic] appendix"; and that he thereafter underwent "multiple abdominal surgeries…in ICU on the vent and ended up [with] an ileostomy." [*Id.*] The medical documents further indicate that the perforated appendix was the cause of the abdominal pain Plaintiff had complained of

---

[1] Although named by Plaintiff as Tara Jones and Ryder May, Defendants identified themselves in their Answer as Tara Leone and May Ryder, *see* [#27 at 1 n.1], and the court directed that the caption be amended to reflect their proper names. *See* [#41]. Mr. White has not been served in this lawsuit.

[2] Under § 1915(e)(2)(B), and facilitated by D.C.COLO.LCivR 8.1, the court must dismiss an action if Plaintiff's claims are frivolous or malicious. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

when he was repeatedly returned to his cell, and that complications, including the rupture of his appendix, required a three-month confinement in the intensive care unit. [*Id.* at 2-3].

On April 4, 2018, this court granted Mr. House's motion for appointment of counsel. *See* [#54, #56]. The following day, the court held a second Status Conference at which Plaintiff voiced his intent to supplement his complaint and Defendants stated they did not oppose. *See* [#57]. This court ordered Plaintiff to "file one comprehensive complaint," on or before April 19, 2017. [*Id.*] The court subsequently extended that deadline to June 9, 2017. *See* [#60 at 2]. On June 13, 2017, this court held a third Status Conference at which Plaintiff represented his intent to proceed with the Amended Complaint, filed October 11, 2016. [#6]. For the purpose of clarity, the court specified June 13, 2017 as the deadline for amending pleadings, and neither side requested an extension. *See* [#70].

On September 5, 2017, counsel entered their appearance on behalf of Plaintiff, [#78-#80], and soon thereafter filed an unopposed motion asking the court to extend various pretrial deadlines. *See* [#82]. The motion did not seek to extend the June 13, 2017 deadline by which to amend pleadings. The Parties then jointly moved the court for referral to the undersigned to hold a settlement conference. *See* [#85]. The matter was set, and reset, for a settlement conference. [#87, #88]. The settlement conference is now scheduled for May 24, 2018. [#105].

On February 2, 2018, Defendants filed the Motion to Amend seeking to amend their Answer to add the affirmative defense that Plaintiff failed to exhaust his administrative remedies, stating, "Counsel recently became aware of two things pertinent to this request to amend: (1) the original answer filed by Defendants did not include language regarding defenses under the Prison Litigation Reform Act (PLRA); and (2) Defendants appear to have legitimate defenses based on the PLRA's exhaustion requirement." [#89 at 4]. Plaintiff filed a Response to the Motion to Amend on February 16, 2018. [#92]. Defendants did not file a Reply. On March 15, 2018,

3

Defendants filed a Motion for Summary Judgment asserting entitlement to qualified immunity and the defense of failure to exhaust. *See* [#99].

Upon review of Defendants' Motion for Summary Judgment, this court discerns that the failure to exhaust defense is related to Defendant Leone's theory that Mr. House failed to exhaust his administrative remedies as to his allegation that she saw him on December 10, 2014 and December 11, 2014, but ignored his complaints and delayed sending him to a hospital until December 17, 2014. [#99 at 31-32, #99-3 at ¶ 14]. Mr. House returned to the custody of the Colorado Department of Corrections on January 11, 2017, and thus Defendants contend that he could have filed his administrative grievance within the time period required by the PLRA. [#99 at 31].

## STANDARD OF REVIEW

Under Tenth Circuit law, courts employ a two-step analysis in determining whether to allow a party to amend the pleadings after the deadline established by the Scheduling Order has passed. First, the court considers whether the moving party demonstrates good cause pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.,* 771 F.3d 1230, 1242 (10th Cir. 2014). If the moving party can demonstrate good cause, the court then weighs whether the amendment should be allowed pursuant to Rule 15(a). *Id.*

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch,* 771 F.3d at 1240 (citing *Pumpco*, *Inc. v. Schenker Int'l, Inc.,* 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to

4

modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

### ANALYSIS

Defendants argue first that Rule 16(b) does not apply to them because this court erroneously failed to set a deadline to permit amendment:

> There is thus far no deadline for the amendment of pleadings, based upon review of the minute orders in the court's docket report. Although Plaintiff's Counsel sought amendment of the scheduling order, the proposed amendment did not contemplate a deadline to amend pleadings. [] The magistrate judge granted the proposed scheduling changes, which did not include a deadline for amending the pleadings [].

[#89 at 4 (citing [#82, #84)]. Defendants then argue that there is no undue delay because they "recently discovered facts which demonstrate the applicability of the exhaustion defense to this case." [*Id.* at 5]. And they argue that "Plaintiff cannot demonstrate undue prejudice," and that the amendment is not sought in bad faith or with dilatory motive because "Counsel only recently became aware that exhaustion was indeed a potentially viable defense in this case…" [#89 at 10].

Plaintiff asserts that the court should apply Rule 16(b) to the Motion to Amend, and find that Defendants failed to exercise diligence in seeking the amendment and now offer no adequate reason for their delay. [#92 at 6-9, 10]. Plaintiff also contends the proposed amendment would cause him prejudice because "[t]here are certain aspects of the exhaustion defense that require

5

substantial discovery," such as whether the Colorado Department of Corrections's grievance process was "available" to him, and the discovery period has closed. [*Id.* at 11, 13].

I. **Applicability of Rule 16(b)**

First, this court considers whether the application of Rule 16(b) is appropriate here. During a Status Conference held on February 8, 2017, the undersigned set May 9, 2017 as the original deadline for amendment of pleadings. *See* [#41 at 2]. Plaintiff and defense counsel attended the Status Conference. *See* [*id.*]. Plaintiff subsequently indicated that he wanted to supplement his pleading, *see* [#42], and the court directed him to file an amended complaint by April 19, 2017, if at all. *See* [#57]. Mr. House did not file an amended pleading, and this court *sua sponte* extended the deadline to do so up to and including June 9, 2017, based on his *pro se* status. *See* [#60]. Mr. House never filed an amended pleading, and, during a Status Conference held June 13, 2017, this court clarified that the Amended Complaint [#6] and Answer thereto [#27] would continue to serve as the operative pleadings. *See* [#70 at 1 ("[t]he deadline for joinder of parties and amendment of pleadings is June 13, 2017.")]. Plaintiff and counsel for Defendants attended the Status Conference, and the minutes reflect that neither side opposed the deadline. *See* [*id.*]. Contrary to Defendants' assertion that "[a] review of the docket entries in this case demonstrates that no deadline has been set for the amendment of pleadings," [#89 at 3], these orders reflect that the court set such a deadline. In addition, the deadline for amendment of pleadings was not subsequently vacated by any later order of the court.

Rule 16 provides that the court must issue a scheduling order as soon as practicable, and that the scheduling order "must limit the time to join other parties, amend pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(2), (3)(A). The Rule also provides that "[a] schedule may be modified only for good cause and with the judge's consent." *Id.* at 16(b)(4). "The primary focus of amended Rule 16 is on the mechanics of pretrial conferences and

6

scheduling. The purpose of Rule 16 is to insure early judicial intervention in the process of trial preparation and proper conduct of that entire process." *Mulvaney v. Rivair Flying Serv., Inc. (In re Baker)*, 744 F.2d 1438, 1441 (10th Cir. 1984) ("we are dealing with the matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both."). As the Tenth Circuit has noted, "[it is] well within the district court's discretion to manage its docket and to avoid an unnecessary burden to itself and defendant." *Whatcott v. City of Provo*, 171 F. App'x 733, 735 (10th Cir. 2006) (citation omitted).

Defendants did not file a Reply or otherwise respond to Plaintiff's recitation of the procedural history, which identifies the two deadlines. To the extent that Defendants suggest that, in granting Plaintiff's subsequent motion to modify the scheduling order to extend certain pretrial deadlines but not the deadline for amendment of pleadings, *see* [#82], this court entered an order that vacated the already-lapsed deadline, *see* [#89 at 4 ("Although Plaintiff's Counsel sought amendment of the scheduling order, the proposed amendment did not contemplate a deadline to amend pleadings…[t]he magistrate judge granted the proposed scheduling changes, which did not include a deadline for amending the pleadings")], such an interpretation is simply incorrect. Litigants routinely move the court to modify a scheduling order *in part*, which is indeed the type of relief Plaintiff sought. He asked to extend the deadlines associated with discovery, the designation of expert witnesses, and the filing of dispositive motions. *See* [#82]. He did not seek to continue the Final Pretrial Conference the court had previously set for January 12, 2018, *see* [#70 at 2].[3] If Defendants' theory were correct, the court would be required to reset or restate all pretrial deadlines every time a litigant moved to modify the scheduling order, even if the motion pertained to only one date or deadline. The result would work an unnecessary burden on the court and result

---

[3] The court *sua sponte* continued the Final Pretrial Conference in light of the requested extensions. *See* [#84].

7

in confusion to the parties. *See* Fed. R. Civ. P. 16(b), Advisory Committee's Note (1983) ("[deadline for amendment of pleadings] assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended," and "the fixing of time limits serves to stimulate litigants to narrow the areas of inquiry and advocacy to those they believe are truly relevant and material. Time limits not only compress the amount of time for litigation, they should also reduce the amount of resources invested in litigation. Litigants are forced to establish discovery priorities and thus to do the most important work first.") (quoting *Report of the National Commission for the Review of Antitrust Laws and Procedures* 28 (1979)). *See also Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) ("[a] Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril"). Absent any authority supporting the interpretation that Defendants propose, this court rejects their argument and finds that Rule 16(b) applies to the Motion to Amend.

**II. Application of Rule 16(b)**

The court now turns to the application of Rule 16(b). As stated above, good cause under Rule 16(b) focuses on the diligence of the parties rather than on any prejudice to the opposing side. While Defendants do not assert an argument specific to Rule 16(b), the court ascertains a good cause argument from their contention that they have not unduly delayed their request to amend. *See Minter*, 451 F.3d at 1206 (instructing that in considering whether a party has unduly delayed, courts focus primarily on the reasons for the delay). Thus the court reviews the record before it to determine if Defendants have demonstrated diligence.

Defendants assert essentially two explanations for their delay in seeking to amend: they only recently became aware of facts that "demonstrate the applicability of the exhaustion defense to this case"; and they had "anticipated Plaintiff would file an amended complaint." [#89 at 5, 6].

8

Leave to amend may be appropriate where a party has learned of new information relevant to the lawsuit. *See Gorsuch,* 771 F.3d at 1240 (citation omitted). However, here, the "new information" Defendants refer to was always within their custody, possession, and control, and it appears that Defendants did not review these materials until well into the discovery period when Plaintiff requested their production. *See* [*id.* at 6-7]. For instance, Defendants state that on December 22, 2017, in response to Plaintiff's Requests for Production, they disclosed all grievances filed by Mr. House relating to medical treatment from December 9, 2014 to December 18, 2014. [*Id.* at 6]. Defendants represent that although Plaintiff "initially brought claims against Defendant Leone for various interactions relating to his medical care, including 2014 and 2015," Defendants realized "[t]hrough the course of discovery [that] Plaintiff was only pursuing claims relating to December of 2014," and that Plaintiff had not filed grievances "regarding the alleged failure of Defendant Leone to provide him with appropriate medical treatment in 2014 within the time frame required by the relevant administrative regulations." [*Id.* at 6-7]. Implicit in these arguments is that somehow, Defendants needed discovery to determine the basis of Mr. House's constitutional claim so that they could in turn, determine that there was an applicable defense for failure to exhaust under the PLRA.

As discussed above, Defendant Leone seeks dismissal of the claims asserting her alleged lack of proper treatment of Mr. House on December 10 and 14, 2014, and her failure to send Mr. House to the hospital until December 17, 2014. [#99 at 31-32]. Although Defendants contend that the scope of Plaintiff's claims narrowed "[t]hrough the course of discovery," Mr. House expressly asserted allegations arising from the alleged lack of treatment in December 2014 in his very first Complaint, filed on September 26, 2016. [#1]. Defendants may not have become "aware" of Plaintiff's alleged failure to exhaust until their counsel began "reviewing documents in advance of a scheduled settlement conference," to occur February 7, 2018 [*id.* at 7], but they were on notice no

9

later than September 26, 2016 that Mr. House was asserting violations of his constitutional rights based on such treatment. And while Defendants suggest that they were at some type of disadvantage in ascertaining the applicability of the defense because their Answer deadline approached "very shortly after [their] counsel became aware of the case and service on his clients," [#89 at 5], there is no explanation as to why Defendants failed to review documents related to Mr. House's administrative grievances until January 26, 2018. Indeed, the date Defendants decided to review the grievances fell over a year after the original Complaint was filed, on September 26, 2016, *see* [#1], almost *one year* after discovery formally opened, *see* [#41 (scheduling order entered February 8, 2017)], and *seven months* after being placed on notice that Mr. House did not intend to further amend his operative pleading, *see* [#70]. "Demonstrating good cause under [Rule 16(b)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)) (quoting *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir. 1994)).

This is not a scenario in which Plaintiff revealed late in discovery information relevant to Defendants' ability to assert an affirmative defense; indeed, Defendants were granted permission to depose Plaintiff as early as February 8, 2017, *see* [#41], and again on May 25, 2017. *See* [#60]. Accordingly, Defendants had access to Plaintiff and his interpretation of the claims asserted well before the June 13, 2017 deadline to amend pleadings. Moreover, the Motion to Amend indicates that Defendants' understanding of the applicability of the exhaustion defense was not based on Plaintiff's interpretation of his claims, but on their review of Plaintiff's grievances. *See* [#89 at 6-7]. And there is no suggestion, nor could there be, that Defendants are unfamiliar with the requirements of the PLRA. This court must conclude then, that Defendants' failure to familiarize themselves with the documents relevant to the exhaustion defense until just prior to the settlement

conference demonstrates a lack of diligence on their part, the very essence of the Rule 16(b) inquiry. *See Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (denying motion to amend answer where defendant possessed at the time the lawsuit was filed "documents from which it could have discovered and asserted the defense"). *See also Colo. Visionary Acad.*, 194 F.R.D. at 687 ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief") *Ayon v. Kent Denver School*, No. 12–cv–2546–WJM–CBS, 2014 WL 85287 (D. Colo. Jan. 9, 2014) (denying motion to amend answer in part where defendants' actions, or failure to take action, was the cause for their seeking to amend their pleading seven months after the deadline for amendment had lapsed). For these reasons, this court finds that Defendants fail to demonstrate that they were unable to meet the deadline governing amendment of pleadings despite their diligent efforts.[4] Because this court finds that Defendants fail to satisfy Rule 16(b), it declines to engage in a Rule 15(a) analysis. *See Petekeiwicz v. Stembel*, No. 13–cv–01865–RM–KLM, 2015 WL 1740386, at *4 (D. Colo. April 14, 2015) ("If good cause is not shown, the Court is not required to consider whether Rule 15(a) excuses that failure") (citing *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.* 820 F.2d 1127, 1132 (10th Cir. 1987) ("We hold that a district court acts within the bounds of its discretion when it denies leave to amend for untimeliness or undue delay") (further citation and quotation marks omitted)). *See also Lewis v. Wells Fargo Bank NA*, No. 11–cv–03387–CMA–KLM, 2012 WL 4097709, at *11 n.4 (D. Colo. Aug. 21, 2012).

---

[4] In so concluding, this court makes no finding as to Defendants' assertion that they may raise the affirmative defense of failure to exhaust in their Motion for Summary Judgment, regardless of whether they are permitted to amend their Answer. *See* [#89 at 9]. That Motion for Summary Judgment is pending before Judge Martinez, and has not been referred to this court for Recommendation.

Accordingly, this court respectfully **RECOMMENDS** that Defendants' Opposed Motion for Leave to Amend Answer [#89] be **DENIED**.[5]

DATED: April 5, 2018

BY THE COURT:

_United States Magistrate Judge_

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).